[Cite as *State v. Hinckley*, 2020-Ohio-6689.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | | Hon. Craig R. Baldwin, J. |
| | : | | Hon. Earle E. Wise, J. |
| -vs- | : | | |
| | : | | |
| MARK HINCKLEY, | : | | Case No. 20-COA-020 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Ashland Municipal
                                 Court, Case No. 19CRB00147

JUDGMENT:                        Affirmed

DATE OF JUDGMENT:                December 11, 2020

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

RICHARD P. WOLFE                          KAREN DESANTO-KELLOGG
Director of Law                           432 Center Street
1213 E. Main Street                       Ashland, Ohio 44805
Ashland, Ohio 44805

*Baldwin, J.*

{¶1}   Appellant, Mark A. Hinckley, appeals the decision of the Ashland Municipal Court finding him guilty of a violation of R.C. 2917.11(A)(4), Disorderly Conduct, a minor misdemeanor.  Appellee is the State of Ohio.

### STATEMENT OF FACTS AND THE CASE

{¶2}   Hinckley owns and operates a truck towing and repair company that shares a driveway with Truck Pro, a company managed by Geremy Carruthers.  These parties also share responsibility for maintenance of the driveway.  Following a heavy snowfall, Carruthers had snow cleared from Truck Pro's loading dock.  Hinckley complained that Carruther's obstructed the shared driveway with snow and insisted that it be moved.  Carruthers refused and Hinckley moved the snow back to the front of Truck Pro's loading dock.  Carruther's reported the obstruction to the Ashland County Sherriff's office and they responded, ultimately leading to charges against Hinckley.

{¶3}   Hinckley's business and the neighboring business, Truck Pro, share a common driveway and have divided responsibility for maintenance of the driveway.  Hinckley is responsible for maintenance of the northeast portion of the drive and Truck Pro maintains the southern portion of the drive.  While the agreement is not part of the record, we imply from the record that the duty of maintenance includes the obligation to remove obstructions created by snowfall.

{¶4}   Hinckley uses the shared drive for ingress and egress of large semi-trucks as well as the towing of disabled semi-trucks to be repaired at his facility. Truck Pro also uses the drive to reach the business as well as accepting regular deliveries of automotive parts, unloaded at a dock that is near the shared driveway.

{¶5}   On Monday, January 21, 2019, after a weekend of heavy snowfall, Carruthers, manager of Truck Pro, found the loading dock obstructed with snow. He cleared the snow from the dock and moved it to the side of his building in the vicinity of the shared drive.

{¶6}   After he had moved the snow, Hinckley approached him and insisted that the snow was obstructing his access and that it must be moved. Carruthers refused to move the snow. Hinckley moved the snow back to its original location in front of Truck Pro's loading dock, obstructing access to the dock. Carruthers recorded Hinckley moving the snow with his cell phone. Carruthers then called the Ashland County Sheriff's Office for assistance.

{¶7}   Deputy Rick Kinter responded to the call and spoke with Hinckley and Carruthers. Hinckley claimed that Carruthers had blocked access to his business with the snow and that he moved it back to where it was originally located. Deputy Kinter determined that the access had not been blocked based upon his observation of the tracks from the vehicle used to move the snow and the photographs and video provided by Carruthers. He told Hinckley that he did not believe the access had been blocked and, even if it had, he should have moved the snow to a different location and not in front of the loading dock. Deputy Kinter asked Hinckley to move the snow from in front of the dock "two or three times" and Hinckley refused. When Deputy Kinter told Hinckley that he would cite him for disorderly conduct, Hinckley "pretty much told [him] start writing."

{¶8}   Deputy Kinter charged Hinckley with a violation of R.C. 2917.11(A)(4) which prohibits a person from "recklessly [causing] inconvenience, annoyance, or alarm to another by * * * [h]indering or preventing the movement of persons on a public street,

road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender."

{¶9} The charges were presented at a bench trial conducted on March 1, 2019 in Ashland County Municipal Court before a magistrate. The state offered the testimony of Carruthers and Deputy Kinter as well as photographs of the scene and the video recording made by Carruthers. Hinckley offered no evidence, but moved for dismissal arguing that the state failed to prove that Hinckley acted recklessly and that Hinckley's actions did not result in "actual hindrance or prevention of movement at that time." The Magistrate took the matter under advisement and issued his decision on March 6, 2019.

{¶10} The Magistrate found that "all elements for a violation of O.R.C. 2917.11A(4) have been proven beyond a reasonable doubt and recommends that Defendant be found guilty of the violation as charged." Hinckley filed objections to the Magistrate's decision claiming that the Magistrate erred by excluding relevant and probative testimony, that his decision was not supported by the evidence and that the award of restitution was not supported by competent credible evidence.

{¶11} The trial court rejected the objections on May 14, 2020 finding that Hinckley "was not prevented from asking any questions nor was he prevented from presenting relevant testimony," that Hinckley did "hinder" the use of the dock and that the objection to restitution was waived as no objection was made at trial. The court imposed a fine of $150.00 and ordered Hinckley to pay restitution in the amount of $250.00.

{¶12} Hinckley filed a notice of appeal and submitted two assignments of error:

**{¶13}** "I. APPELLANT'S CONVICTION FOR DISORDERLY CONDUCT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶14}** "II. THE COURT ERRED IN EXCLUDING RELEVANT EVIDENCE AT TRIAL."

## STANDARD OF REVIEW

**{¶15}** In his first assignment of error, Hinckley argues that the conviction was against the manifest weight of the evidence, but the argument offered intermingles an argument that the conviction was supported by insufficient evidence and that the conviction was against the manifest weight of the evidence. Under the circumstances and in the interest of justice, we will consider both arguments despite the fact the assignment of error asserts only that the conviction was against the manifest weight of the evidence.

**{¶16}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶17}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

## ANALYSIS

### I.

{¶18} Hinckley was charged with a violation of R.C. 2917.11(A)(4) when the Deputy concluded that he "recklessly cause[d] inconvenience, annoyance, or alarm to another by * * *[h]indering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender."  Hinckley contends the record does not contain sufficient evidence to support the conviction for two reasons.  First, in the context of this case, he claims the statute requires proof that Truck Pro's delivery trucks attempted to access the loading dock and were hindered or prevented from accessing the dock. Because the record shows that no truck was prevented or hindered from accessing the dock, the court erred by not dismissing the charge.

{¶19}  Hinckley also contends that his moving the snow to the front of Truck Pro's loading dock was a "lawful and reasonable purpose" and a second reason to dismiss the charge.

{¶20}  The evidence that the loading dock was blocked by the snow "replaced" by Hinckley was confirmed by Carruthers and Deputy Kinter.  Hinckley admitted to the Deputy that he had moved the snow to that location and that he would not move it to any other location despite several requests by Deputy Kinter.  With approximately five feet of snow piled in front of the dock, Truck Pro was hindered and prevented from exercising

his right to use his property and, as a result was inconvenienced, annoyed and likely alarmed that his neighbor would commit such an act.

**{¶21}** Hinckley argues that the state must provide evidence that that vehicle attempted to use the dock to prove that his actions hindered or prevented movement so as to interfere with the rights of others. Hinckley provides no authority for his interpretation and we are unwilling to adopt it. While a thwarted attempt to reach the dock would be evidence that Hinckley had committed the charged offense, the uncontradicted evidence that the dock was unreachable by any vehicle is sufficient to fulfill that element of the offense. Hinckley's actions hindered or prevented the use of the dock, interfering with Truck Pro's right to use the dock thus causing inconvenience, annoyance and alarm to Truck Pro and its staff.

**{¶22}** We also reject Hinckley's assertion that he moved the snow to the front of the dock to serve a "lawful and reasonable purpose" and that the charge should be dismissed. The record contained sufficient evidence to support a conclusion, beyond a reasonable doubt, that Hinckley's access was not affected by the snow that he moved to the front of his neighbors dock. He was not maintaining the easement by moving the snow to that particular location, as the evidence demonstrated that he had other options to dispose of the snow. When the Deputy requested that he move the snow to a different location he did not claim that he had no space to relocate it, he simply refused to move it, even in response to the Deputy's warning that he would be cited for his actions.

**{¶23}** We hold that the record lacks evidence that Hinckley's actions served a "lawful or reasonable purpose" sufficient to excuse his violation of the Revised Code.

**{¶24}** We find that the holding of the trial court is supported by sufficient evidence and is not against the manifest weight of the evidence.  The first assignment of error is overruled.

## II.

**{¶25}** Hinckley claims in this second assignment of error that the trial court erred by excluding relevant evidence, but he does not provide a clear description of the evidence excluded.  We have reviewed the record and find that no evidence offered by Hinckley was excluded.

**{¶26}** Hinckley contends his "attorney was attempting to elicit testimony about Deputy Kinter's observations regarding whether or not there was an alternative route for trucks to enter Truck Pro's loading dock, when the Magistrate objected to this line of questioning as irrelevant." He cites to the exchange between counsel and the Magistrate in support of his contention that relevant and admissible evidence was excluded. The portion of the transcript not cited in Hinckley's brief reveals the flaw in his argument. The balance of the exchange between the Magistrate and counsel shows that Hinckley was permitted to continue his questioning of the Deputy and  that no evidence was excluded:

THE COURT: That has nothing to do with it, I think it has everything to do with him moving snow from where it was and dumping it in front of the dock. I mean he could have moved it anywhere, he could have moved it -- if he, if he was anxious to move it, he could have moved it anywhere, but to me we're limited to, when he takes that snow and dumps it in front of the dock, is he guilty, is he guilty and I don't know whether he is or not, I'm going to

do a little research on this, but when -- forget all the maintenance of the, the easement, when he did what he did, was that disorderly, does that constitute disorderly conduct?

MR. KELLOGG: Okay.

THE COURT: So I think some of these questions are irrelevant, but I'm going to let you go, the next objection comes from the other side if they want to do it, go ahead.

Q        How many feet wide was the loading dock, do you know?

A        I don't know.

Q        Okay. And are you aware if the Sheriff's been out there before to deal with this situation?

MR. HUNTER: I'm going to object as to relevance.

THE COURT: Overruled.

Q        Are you aware if the Sheriff's been out to deal with this in the past?

A        To deal --

Q        This, this situation between the two parties?

A        The snow or just between the two?

Q        Yes, the, the snow.

A        Not that I know of, I don't know.

Q        Okay. And are you aware if Mr. Hinckley's ever been warned previously --

THE COURT: Overruled.

Q        -- previously about the snow movement?

A          I don't, I don't know, no.

Q          Okay. And did you ever see Mr. Hinckley move the snow at all?

A          No, he admitted to moving it.

Q          I understand.

MR. KELLOGG: Nothing further.


**{¶27}**  The Magistrate did warn Hinckley's counsel that the line of question seemed irrelevant, but he also expressly stated that he would permit the questioning.  Counsel continued the questioning and all objections to his questions were overruled.

**{¶28}** Hinckley presented this argument in his objections to the Magistrate's decision. The trial court reviewed that objection and concluded Hinckley "was not prevented from asking any questions nor was he prevented from presenting relevant testimony" and we must concur. Judgment Order, May 14, 2020, p.2 Docket No. 25. Because no evidence was excluded, we have nothing to rule upon and the second assignment of error must be denied.

**{¶29}** The decision of the Ashland County Municipal Court is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Wise, Earle, J. concur.